IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES CURTISS TAYLOR, JR., § | | |
| Plaintiff, § | | |
| v. § | | A-13-CV-464-LY |
| § | | |
| KENNETH ANDERSON, et al., § | | |
| Defendants. § | | |

### ORDER AND REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant City of Georgetown's Motion to Dismiss for Failure to State a Claim (Dkt. No. 9); Defendant Hard Rock Café, Austin, Texas' Motion to Dismiss (Dkt. No. 11); Defendants City of Austin, Austin Police Department, and Kristof Oborski's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 13); Defendant Stephen Brittain's Motion to Dismiss for Failure to State a Claim (Dkt. No. 16); Defendants Oliver J. Bell, Bradley M. Livingston, Bryan Collier, Rick Thaler, Judy Norris, Pamela Moore-Pace, John Rupert, Gary Wright, Myra Walker, Sarah Pierson, Paul Schrode, Texas Board of Pardons and Paroles, and the University of Texas Medical Branch-Correctional Managed Care Division's Motion to Quash (Dkt. No. 19); and Defendant American Correctional Association's Motion to Dismiss (Dkt. No. 20).

The District Court referred Defendants Oliver J. Bell, Bradley M. Livingston, Bryan Collier, Rick Thaler, Judy Norris, Pamela Moore-Pace, John Rupert, Gary Wright, Myra Walker, Sarah Pierson, Paul Schrode, Texas Board of Pardons and Paroles, and the University of Texas Medical Branch-Correctional Managed Care Division's Motion to Quash (Dkt. No. 19) to the undersigned Magistrate Judge for resolution and the remaining motions for report and recommendation pursuant

to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. BACKGROUND[1]

The events giving rise to the instant suit primarily occurred in 2003 and 2005. On December 28, 2003, Plaintiff Charles Curtiss Taylor, Jr. ("Taylor"), was driving on Interstate 35 when he was pulled over in Georgetown, Texas, on suspicions of driving under the influence of alcohol; he was ultimately charged with driving while intoxicated ("DWI"). Dkt. No. 1, ¶ 21. Although Taylor admits to drinking one beer prior to his trip, Taylor contends that his driving performance was mostly the result of prescription medications, which he takes for his HIV, mental depression, and bipolar conditions. *Id.* ¶¶ 20–21. Following court proceedings, Taylor pleaded guilty and received a sentence of ten years probation. *Id.* ¶ 43.

Over a year later, on May 13, 2005, Taylor alleges that he stopped to eat at a Hard Rock Café restaurant in downtown Austin. *Id.* ¶ 44. Upon attempting to pay the bill, Taylor discovered that he had lost his wallet. *Id.* According to Taylor, the restaurant manager then called the Austin Police Department and, although the precise reason is not entirely clear from Taylor's recitation of the events, he was subsequently arrested by the responding police officer. *Id.* Additionally, the responding police officer also discovered an uncontaminated pipe in a backpack that Taylor was carrying that day—a bag Taylor claims he borrowed from his nephew. *Id.* Taylor was detained

---

[1] The background contained in this Report and Recommendation is primarily based on Taylor's complaint. Dkt. No. 1. Although the Court has construed Taylor's complaint liberally, his extensive, 48-page complaint is at times difficult to comprehend. Nevertheless, the Court has made every effort to accurately portray the events of this case.

pending his revocation hearing and on December 19, 2005, was sentenced to ten years in Texas state prison. *Id.* ¶ 46. Taylor was released from custody on April 3, 2013. *Id.* ¶ 32.

Taylor now brings this § 1983 suit, alleging violations of his constitutional rights by the twenty-two defendants named in this suit. Dkt. No. 1, ¶ 15. Taylor further charges all twenty-two defendants with intentional infliction of emotional distress. *Id.* ¶ 94. For a variety of reasons, some of the defendants in this suit argue that Taylor has failed to state a claim upon which relief may be granted and request that Taylor's claims be dismissed. *See* Dkt. Nos. 9, 11, 13, 16, and 20. Other defendants assert that Taylor has failed to properly effect service of his complaint and ask that the Court grant their motion to quash on this basis. Dkt. No. 19. Taylor has not responded to any of these motions.

## II. LEGAL STANDARDS

Pro se complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *see also Watts v. Graves*, 720 F.2d 1416, 1419 (5th Cir. 1983). In deciding whether a complaint states a claim, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* However, the petitioner's pro

se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. Mbank Houston N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

### A.   Motions to Dismiss

Defendants City of Georgetown, Hard Rock Café, City of Austin, Austin Police Department, Kristof Oborski, Stephen Brittain, and American Correctional Association move to dismiss based upon FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### B.   Section 1983 Actions

Title 42 U.S.C. §1983 provides, in pertinent part, the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The purpose of 42 U.S.C. §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 112 S.Ct. 1827, 1830 (1992). To state a claim under §1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997), *cert. denied*, 119 S.Ct. 65 (1998).

Similarly, 42 U.S.C. §1985 provides a civil remedy to citizens who have been deprived of federally guaranteed rights by conspirators acting under "color of law." *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 371 (1979). Section 1985(3) does not, however, create any substantive rights; it simply provides a remedy for the violation of the rights it designates. *Id.* at 372. To bring a claim of civil conspiracy under §1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994).

**C.     Intentional Infliction of Emotional Distress**

Under Texas law, to recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme

and outrageous; (3) its actions caused plaintiff emotional distress; and (4) the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006); *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003). With regard to the second element, "[w]hether a defendant's conduct is 'extreme and outrageous' is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). Courts consider the context and the relationship between the parties when ascertaining whether specific conduct is extreme and outrageous. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). A defendant's tortious or otherwise wrongful actions does not, by itself, render the conduct extreme and outrageous. *Bradford*, 48 S.W.3d at 758. Rather, a defendant's conduct satisfies the second element only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kroger*, 216 S.W.3d at 796 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

### III. ANALYSIS

In evaluating the merits of defendants' motions against Taylor's complaint, the Court is mindful that it must construe Taylor's claims liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted). In this case, Taylor has filed an extensive, 48-page complaint and has attached nearly 100 pages in Exhibits for the Court to consider.[2] Dkt. No. 1. As a general

---

[2] Most of the Exhibits are copies of letters Taylor has sent to the defendants in this case prior to commencement of suit. There are also copies of his habeas petition in state court.

matter, Taylor alleges that the defendants, particularly former state District Judge Kenneth Anderson ("Anderson"), former District Attorney John Bradley ("Bradley"), and Stephen Brittain ("Brittain"), discriminated against him because he is gay, violated his constitutional rights, and engaged in a conspiracy to do so by falsifying a waiver of appeal and depriving him of his due process, equal protection, compulsory process, and appeal rights. *Id.* ¶¶ 22–26. Taylor further contends that defendants' actions subjected him to unconstitutional conditions of confinement while he was in prison and also denied him the right to obtain his trial records. *Id.* Taylor's remaining allegations focus on the defendants' failure to (1) provide adequate medical care during his imprisonment and (2) take action when notified of the wrongs committed against Taylor. *Id.* ¶¶ 85–93.

**A.  Statute of Limitations**

To the extent Taylor alleges violations of his constitutional rights under § 1983 or intentional infliction of emotional distress based on his DWI arrest in 2003 or the incident at the Hard Rock Café in 2005, his claims are untimely and barred by the statute of limitations. This conclusion holds even if the Court were to construe Taylor's constitutional allegations under § 1985.

To determine the applicable statute of limitations period for civil rights actions brought under §§ 1983 and 1985, federal courts look to the "general statute of limitations governing personal injuries in the forum state." *Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005); *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987). Under Texas law, civil rights actions under brought under §§ 1983 and 1985 "are deemed analogous to Texas tort actions" and are subject to a limitations period of two years. *Helton*, 832 F.2d at 334; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Similarly, allegations of intentional infliction of emotional distress also constitute a tort under Texas law and thus, such charges are also governed by a limitations period of two years.

*See Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 211 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Stevenson v. Koutzarov*, 795 S.W.2d 313, 319 (Tex.App.—Houston [1st Dist.] 1990, writ denied). "Although state law controls which limitations period applies, federal law determines when a cause of action accrues." *Helton*, 832 F.2d at 334. "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint." *Id.* at 334–35; *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (finding that a cause of action under § 1983 accrues when the plaintiff has a complete and present cause of action or, in other words, when the plaintiff can file suit and obtain relief) (internal quotations and citations omitted); *Georgen-Saad v. Tex. Mut. Ins. Co.*, 195 F.Supp.2d 853, 859–60 (W.D. Tex. 2002) (explaining that a claim for intentional infliction of emotional distress accrues when the act effects an injury, such as when a plaintiff becomes aware of the conduct complained of in the lawsuit).

As a final matter, a federal court "applying the forum state's statute of limitations . . . should also give effect to any applicable tolling provisions." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). Texas courts have recognized the continuing tort doctrine as an exception to the statute of limitations. *See, e.g., Hernandez v. Thomson*, 464 Fed.Appx. 221, 222 (5th Cir. 2010) (citing *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 443 (Tex.App.—Fort Worth 1997, pet. denied). Although Texas courts have "recognized the continuing tort doctrine, the doctrine only applies if the last tortious act falls within the limitations period." *Bhalli*, 896 S.W.2d at 212 (internal citations omitted). In other words, for a case involving a continuing tort, "the cause of action is not complete and does not accrue until the tortious acts have ceased." *Twyman v. Twyman*, 790 S.W.2d 819, 821 (Tex.App.—Austin 1990), *rev'd on other grounds*, 855 S.W.2d 619 (Tex. 1993); *see also Rogers v. Ardella Veigel Inter Vivos Trust No. 2*, 162 S.W.3d 281, 290 (Tex.App.—Amarillo 2005, pet.

denied). Furthermore, "care must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortuous acts and 2) continuing injury arising from one wrongful act." *Rogers*, 162 S.W.3d at 290. "While the former evinces a continuing tort, the latter does not." *Id.*; *see also Daboub v. Gibbons*, 42 F.3d 285, 291 (5th Cir. 1995) (distinguishing continuing damages from a continuing tort and explaining that a continuing tort does not arise when one copyrights another's song and repeatedly sells the song for profit).

In this case, Taylor's allegations against Defendants City of Georgetown, Hard Rock Café, City of Austin, Austin Police Department ("APD"), Officer Kristof Oborski ("Oborski"), and Stephen Brittain ("Brittain") all stem from events which occurred either in relation to Taylor's DWI arrest in 2003 or his 2005 arrest at the Hard Rock Café. The complaint also demonstrates that the actions alleged by Taylor do not constitute continuing torts. Taylor does not allege any repetitive or tortuous acts, much less any acts that ceased within the applicable statute of limitations. Consequently, the Court concludes that Taylor's claims against these defendants are untimely and barred by Texas's two-year statute of limitations.[3]

### 1. City of Georgetown

With regard to the City of Georgetown, Taylor argues that it violated his First, Sixth, and Fourteenth Amendment rights by denying him equal protection, due process of law, and

---

[3] The Court recognizes that with regard to Defendants City of Georgetown, Hard Rock Café, City of Austin, Austin Police Department ("APD"), Officer Kristof Oborski ("Oborski"), and Stephen Brittain ("Brittain"), there are several reasons why Taylor's constitutional and intentional infliction of emotional distress claims cannot succeed. For example, Taylor may not bring suit against APD because it is not a separate legal entity subject to suit. *See, e.g.*, *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991). However, in the interests of judicial efficiency, the Court has chosen to focus its analysis on the applicable statute of limitations, which would bar Taylor's constitutional and intentional infliction of emotion distress claims against these defendants regardless of whether Taylor's claims would survive scrutiny under other legal theories.

discriminating against him based on his sexual orientation. Dkt. No. 1, ¶¶ 38–47. Taylor seems to blame the City of Georgetown for the actions of Anderson, Bradley, law enforcement officers, and city and county court administrators in relation to his DWI arrest in 2003. *Id.* ¶¶ 39–41. More specifically, Taylor claims that law enforcement officers and city and county court administrators "ridiculed, humiliated, and victimized" him with discriminatory remarks as a result of his sexual orientation. *Id.* Taylor further contends that Anderson and Bradley ultimately coerced him into accepting allegedly unfavorable conditions that imposed a sentence of ten years probation for his 2003 DWI arrest. *Id.* ¶ 43. In relation to the 2005 incident at the Hard Rock Café, Taylor alleges that Anderson deliberately ignored Taylor's medical conditions when Anderson sentenced him to ten years in prison. *Id.* ¶ 46. Additionally, there also appears to be general allegations that Anderson and Bradley (1) discriminated against Taylor on account of his sexual orientation; (2) submitted a false waiver of appeal on behalf of Taylor; and (3) along with other trial court administrators, denied Taylor the right to secure his trial records for over six years. *Id.* ¶¶ 22–26.

Based on the factual information provided in the complaint, practically all of the facts upon which Taylor relies for his claims against the City of Georgetown occurred in relation to his 2003 DWI arrest or his 2005 incident at the Hard Rock Café. Taylor primarily complains of actions taken by Anderson, Bradley, law enforcement officers, and city and trial court administrators during court proceedings in relation to Taylor's two arrests in 2003 and 2005. Although Taylor's causes of action accrued, at the latest, in May 2005, Taylor did not file the instant suit until June 4, 2013. Dkt. No. 1. Consequently, any claim Taylor may have against Anderson, Bradley, law enforcement officers, or city and trial court administrators relating to his 2003 DWI arrest or 2005 incident would be barred as untimely filed.

It is unclear, however, whether the statute of limitations clearly bar Taylor's allegation that he was prevented from obtaining a copy of his trial records. *Id.* ¶¶ 26. Yet, it is plainly obvious that Taylor has failed to meet the pleading standards set forth by the Supreme Court in *Iqbal*. As noted previously, "[t]o survive a motion to dismiss, a complaint must contain *sufficient factual matter*, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted) (emphasis added). Even construing Taylor's complaint liberally, there are simply no facts to support his conclusory allegation that he was denied access to his trial records by the City of Georgetown for six years. Every mention of this allegation only states his conclusion that he was denied access to his trial records with no additional factual material in support.[4] *See* Dkt. No. 1, ¶¶ 26, 32, 51, 66, 71, and 73. As such, to the extent Taylor claims that he was denied access to his trial records by the City of Georgetown, his claim must also be dismissed for failure to state a claim.

Moreover, it is not even clear that Taylor has sufficiently alleged any responsibility on the part of the City of Georgetown for his claims. For one, the Court notes that Taylor does not allege that a police officer with the City of Georgetown had any part in his arrests. Dkt. No. 1, ¶ 21. Furthermore, Taylor has provided no evidence and has alleged no facts that suggest any relationship between Anderson or Bradley and the City of Georgetown.[5] From the information provided, it appears that Anderson was formerly a state district judge serving in the 277th District Court, which

---

[4] Taylor does contend that Anderson "refused to entertain [Taylor's] numerous written requests for the production of trial records . . . ." Dkt. No. 1, ¶ 58(f). However, as noted in the following paragraph, the City of Georgetown is not responsible for the actions of Anderson as he was a state district judge and was not controlled or regulated in any manner by the City of Georgetown.

[5] In Texas, state district judges and district attorneys are employees of counties (in this instance, Williamson County).

is located in Georgetown, Texas. *Id.* ¶ 2. Additionally, Bradley was the former district attorney for Williamson County, not the City of Georgetown, as Taylor alleges. *Id.* ¶ 70. Neither of these positions indicate a connection with the City of Georgetown. The City of Georgetown is a separate municipal entity from Williamson County and the State of Texas. The City of Georgetown cannot be held liable for any constitutional violations allegedly committed by Anderson or Bradley. As such, Taylor's claims against the City of Georgetown should be dismissed.

### 2. Hard Rock Café

Although Taylor's allegations against the Hard Rock Café in Austin, Texas, are not entirely clear, he appears to charge the Hard Rock Café with falsely accusing him of stealing a meal without payment on May 13, 2005. *See* Dkt. No. 1, ¶¶ 28, 46, 71, 78. According to Taylor, the false accusation by Hard Rock Café resulted in a series of violations by the other defendants. *Id.* ¶ 29.

The complaint clearly demonstrates that any involvement by the Hard Rock Café was limited to the incident on May 13, 2005. *Id.* ¶ 44. There are no allegations that the Hard Rock Café committed any conduct following Taylor's arrest in May, 2005, which Taylor contends resulted in a violation of his constitutional rights or his emotional distress. Because Taylor did not file this case until June 4, 2013, his claims against the Hard Rock Café are barred by the statute of limitations.

### 3. City of Austin, Austin Police Department, and Officer Kristof Oborski

Taylor's claims against the City of Austin, APD, and Oborski are primarily contained in Count Seven of his complaint. Dkt. No. 1, ¶¶ 77–84. Taylor argues that these defendants violated his Fourth and Fifth Amendment rights when Oborski arrested Taylor in May, 2005. *Id.* ¶ 77. Taylor asserts that Oborski failed to thoroughly investigate the situation when he was called by the Hard Rock Café, which Taylor contends would have revealed that he had simply lost his wallet in

a cab. *Id.* ¶ 78. From the facts provided in the complaint, it is clear that any conduct by the City of Austin, APD, and Oborski was limited to their involvement in the incident at the Hard Rock Café in May, 2005. There are no allegations that the City of Austin, APD, or Oborski perpetrated any further constitutional violations or emotional distress upon Taylor after his 2005 arrest. In particular, the complaint lacks any factual basis that suggests the City of Austin, APD, or Oborski engaged in any conduct affecting Taylor within the applicable statute of limitations for his claims. As such, the Court determines that Taylor's § 1983 and intentional infliction of emotional distress claims against the City of Austin, APD, and Oborski must be dismissed as untimely filed.

   **4.  Stephen Brittain**

  Taylor charges Brittain with violating his Fifth, Sixth, and Fourteenth Amendment rights. Dkt. No. 1, ¶ 61. Taylor's appears to fault Brittain for a variety of conduct in relation to Brittain's defense of Taylor during his 2003 DWI arrest and the 2005 incident at the Hard Rock Café. *Id.* ¶¶ 61–69. Taylor's complaints focus primarily on his belief that Brittain rendered ineffective assistance of counsel after being paid by Taylor or his family. *Id.* ¶¶ 64–66. Taylor further contends that Brittain abandoned him on appeal and condoned Anderson's abuse of authority by and through the falsification of Taylor's waiver of appeal, which occurred in October, 2004. *Id.* ¶ 66. Brittain asserts that his representation of Taylor ended on December 19, 2005, and thus, Taylor's claims are barred by the statute of limitations. Dkt. No. 16, ¶ 4.

  There appears to be no dispute that Brittain represented Taylor during his 2003 DWI arrest and court proceedings related to the 2005 incident at the Hard Rock Café. However, the complaint contains no allegations that Brittain engaged in any representation of Taylor after 2005. Taylor presents no facts supporting his belief that Brittain had been retained as his lawyer through 2013.

13

*See, e.g.*, Dkt. No. 1, ¶ 69. In fact, the complaint clearly shows that the alleged payment to Brittain occurred in December, 2005. *Id.* ¶ 65. Therefore, the Court finds that Taylor's claims against Brittain are barred by the statute of limitations.

### 5. Summary

In light of the foregoing discussion, the Court will recommend that the District Judge **GRANT** Defendant City of Georgetown's Motion to Dismiss for Failure to State a Claim (Dkt. No. 9); Defendant Hard Rock Café, Austin, Texas' Motion to Dismiss (Dkt. No. 11); Defendants City of Austin, Austin Police Department, and Kristof Oborski's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 13); and Defendant Stephen Brittain's Motion to Dismiss for Failure to State a Claim (Dkt. No. 16).

**B.   Defendants Oliver J. Bell, Bradley M. Livingston, Bryan Collier, Rick Thaler, Judy Norris, Pamela Moore-Pace, John Rupert, Gary Wright, Myra Walker, Sarah Pierson, Paul Schrode, Texas Board of Pardons and Paroles, and the University of Texas Medical Branch-Correctional Managed Care Division's Motion to Quash (Dkt. No. 19)**

In Taylor's complaint, he also names numerous "secondary" defendants claiming that each defendant violated his civil rights without justification following the wrongful conduct of Anderson, Bradley, Brittain, and the City of Georgetown. Dkt. No. 1, ¶ 85. These "secondary" defendants include Oliver J. Bell, Bradley M. Livingston, Bryan Collier, Rick Thaler, Judy Norris, Pamela Moore-Pace, John Rupert, Gary Wright, Myra Walker, Sarah Pierson, Paul Schrode, Texas Board of Pardons and Paroles, and the University of Texas Medical Branch-Correctional Managed Care Division. Taylor brings two primary claims against these "secondary" defendants: either (1) the defendant failed to take action to correct the alleged injustices being done to Taylor and/or (2) the defendant provided Taylor with inadequate medical care during Taylor's imprisonment. *Id.* ¶¶

85–88. These "secondary" defendants assert that Taylor has failed to provide proper service and request the Court to quash Taylor's improper service. Dkt. No. 19. As mentioned previously, Taylor has not responded to this motion.

The evidence before the Court demonstrates that Taylor has indeed failed to perform proper service upon the "secondary" defendants in this suit. Federal Rules of Civil Procedure 4(c)(1) and (2) provide that the plaintiff "is responsible for having the summons and complaint served within the time allowed by Rule 4(m)" and further specify that service is only effective if made by "[a]ny person who is at least 18 years old and *not* a party" to the lawsuit. FED. R. CIV. P. 4(c)(2) (emphasis added). Similarly, Texas law also prohibits a party to the lawsuit from serving the defendant in that suit. TEX. R. CIV. P. 103 ("[N]o person who is a party to or interested in the outcome of a suit may serve any process in that suit . . . ."). With regard to time constraints, Rule 4(m) requires proper service to be completed within 120 days after the complaint is filed. FED. R. CIV. P. 4(m). Rule 4(e) also allows proper service by (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," (2) "delivering a copy of the summons and of the complaint to the individual personally," or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Here, the evidence demonstrates that Taylor apparently attempted to serve the "secondary" defendants by personally mailing each of them a copy of the summons and complaint via the United States Postal Service. Dkt. No. 19, Exh. A. Taylor presents no contention that rebuts this claim. Based on the record before the Court, Taylor did not elect to personally serve the "secondary" defendants nor did he properly deliver a copy of the complaint and summons to an agent authorized

to receive service of process. Additionally, the fact that Taylor personally mailed copies of the complaint and summons to each "secondary" defendant constitutes improper service under both federal and Texas law. As such, Taylor has failed to effect proper service within 120 days upon the "secondary" defendants. Taylor's pro se status does not absolve him of the requirement to properly serve each defendant in his suit. Consequently, the Court will **GRANT** the "secondary" defendants' Motion to Quash (Dkt. No. 19).

C.     **Defendant American Correctional Association's Motion to Dismiss (Dkt. No. 20)**

Taylor's complaint only briefly mentions his claims against Defendant American Correctional Association ("ACA"). Taylor argues that ACA failed "to monitor, investigate, and act to correct the civil right violations being committed by the officials and employees of the Texas Criminal Justice System, primarily the Texas Depaartment [sic] of Criminal Justice-Institutional Division." Dkt. No. 1, ¶ 34. Taylor states that he notified ACA on several occasions regarding the alleged violations occurring during his confinement. *Id.* In its Motion to Dismiss, ACA contends that it is not a state actor and thus, cannot be responsible for constitutional violations alleged by Taylor. Dkt. No. 20, ¶¶ 8–20. ACA asserts that it is a private entity with no control or jurisdiction over the regulation of correctional facilities in Texas. *Id.* ¶¶ 10–18. ACA further submits that it is not liable for Taylor's intentional infliction of emotional distress claim because Taylor has failed to establish the requisite elements of that claim. *Id.* ¶¶ 21–22.

After reviewing the record, the Court concludes that ACA is not a state actor and consequently, cannot be responsible for the constitutional violations alleged by Taylor. In addressing this issue, the Supreme Court has taken several approaches to determining whether a private actor's conduct can be fairly attributed to a state. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549–50

(5th Cir. 2005). Under the "public function test," the court examines whether the private entity performs a function that is traditionally reserved solely to the State. *Id.* at 549. The "state compulsion test" asks whether the private entity's actions are attributable to the State because the State exerts coercive power over the private entity or provides significant encouragement. *Id.* at 549–50. The "nexus" or "state action test" looks at whether the State has insinuated itself into the affairs of the entity such that it was effectively a joint participant in the wrong. *Id.* at 550. Finally, under the "joint action test" the private entity will be considered a state actor if it willfully participated in joint action with the State. *Id.*

Here, Taylor has failed to allege sufficient facts to show that ACA acted "under the color of state law" or that its actions can be "fairly attributable to the state." *Id.* at 549. Taylor apparently believes that it is ACA's duty to monitor, investigate, and correct any wrongdoings by the Texas Criminal Justice System. However, he does not allege any facts nor does he cite to any sources that support his contention. Rather, ACA is a private, not-for-profit corporation that provides a voluntary accreditation program for correctional facilities. *Estate of Williams v. Am. Corr. Ass'n*, No. 1:06–CV–196, 2008 WL 244322 at *1 (S.D. Miss. Jan. 27, 2008). Through this program, ACA merely evaluates whether facilities seeking ACA accreditation have or have not demonstrated their compliance with ACA standards at the time of inspection. *Id.* ACA does not have the authority to direct or change operations of the facilities it inspects. *Id.*; *see also Miller v. Harrison Cnty.*, No. 1:07–CV–541, 2008 WL 4793801 at *2 (S.D. Miss. Oct. 29, 2008). In this case, there are no alleged facts to suggest that ACA was (1) performing a function reserved solely to the state; (2) coerced into inspecting and providing accreditation to the facilities in question; or (3) carrying out its inspections and evaluations in conjunction with the State. In fact, Taylor does not even allege that the facilities

in which he stayed during his sentence were ACA-accredited or inspected by the ACA. Based on this record, the Court determines that ACA cannot be designated a state actor and thus, is not liable for the constitutional violations alleged by Taylor.

To the extent Taylor asserts allegations of intentional infliction of emotional distress against ACA, such claims also should be dismissed. Taylor's complaint alleges that ACA failed to monitor, investigate, and correct the alleged violations being committed by the Texas Criminal Justice System. Dkt. No. 1, ¶ 34. However, as noted previously, ACA does not actively monitor or regulate the operations at correctional facilities. Instead, ACA merely inspects and provides accreditation to facilities on a voluntary basis. Furthermore, there are no allegations in the complaint indicating that the ACA was even involved in accrediting or inspecting the facilities at which Taylor served his sentence. From this record, the Court concludes that ACA's conduct was not "extreme and outrageous." Because Taylor cannot establish the elements of an intentional infliction of emotional distress claim against ACA, his claim should be dismissed.

## IV. ORDER AND RECOMMENDATIONS

In accordance with the preceding discussion, the undersigned hereby **GRANTS** Defendants Oliver J. Bell, Bradley M. Livingston, Bryan Collier, Rick Thaler, Judy Norris, Pamela Moore-Pace, John Rupert, Gary Wright, Myra Walker, Sarah Pierson, Paul Schrode, Texas Board of Pardons and Paroles, and the University of Texas Medical Branch-Correctional Managed Care Division's Motion to Quash (Dkt. No. 19).

The undersigned further **RECOMMENDS** that the District Judge **GRANT** Defendant City of Georgetown's Motion to Dismiss for Failure to State a Claim (Dkt. No. 9); Defendant Hard Rock Café, Austin, Texas' Motion to Dismiss (Dkt. No. 11); Defendants City of Austin, Austin Police

Department, and Kristof Oborski's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 13); Defendant Stephen Brittain's Motion to Dismiss for Failure to State a Claim (Dkt. No. 16); and Defendant American Correctional Association's Motion to Dismiss (Dkt. No. 20).

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this the 10th day of February, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE